## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Jesus Revilla & Rita Revilla, | ) | C.A. No. |
| Plaintiffs, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| 3M Company and Aearo Technologies LLC, | ) | **DEFENDANTS' 3M COMPANY AND AEARO TECHNOLOGIES LLC NOTICE OF REMOVAL** |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § § 1332, 1441, 1442(a)(1), and 1446, Defendants 3M Company and Aearo Technologies LLC (collectively, "Defendants") hereby give notice of the removal of this civil action from the Superior Court of State of Delaware, to the United States District Court for the District of Delaware.  As grounds for this removal, Defendants state as follows:

1.      This civil action was commenced on or about March 28, 2022, by the filing of a Summons and Complaint in the Superior Court of State of Delaware, a copy of which is attached as **Exhibit A**.  Defendants were served with the Summons and Complaint on April 11, 2022.  Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within 30 days of receipt, by service or otherwise, of the initial pleadings in this action.  All state court pleadings are attached as **Exhibit B**.

2.      Mr. Revilla ("Plaintiff") alleges personal injuries sustained during his military career while in training and/or on active military duty domestically and

abroad.  Specifically, Plaintiff alleges that he suffers from hearing loss and tinnitus from the use of Defendant's 3M's Dual-ended Combat Arms™ Earplugs version 2 ("CAEv2") while serving in the United States Air Force from 1997 to 2020, including during live combat and training and field exercises.  (Ex. A (Compl. ¶¶ 1-2)).

3.    CAEv2 was designed by Aearo Technologies LLC ("Aearo") in close collaboration with the U.S. military.[1]   CAEv2 represented a revolutionary breakthrough in hearing protection for service members by allowing soldiers to maintain situational awareness (*e.g.*, to hear nearby voice commands) while also maintaining some protection from gunfire and other higher decibel impulse sounds. CAEv2 met the U.S. military's specifications and helped the military provide hearing protection to service members.

4.    This Court has jurisdiction over this action and the case is therefore removable.  Specifically, this action is removable for two separate and independent reasons.

5.    ***First***, removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Aearo was acting under the direction of a federal officer when it designed and sold the CAEv2, and 3M intends to assert various federal defenses—including the government contractor defense—in response to

---

[1]   3M acquired Aearo in 2008.

Plaintiff's claims. *Pratt v. 3M Company*, No. 1:22-cv-00350-VAC (D. Del. Mar. 18, 2022); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, 2020 WL365617, at *6 (N.D. Fla. Jan. 22, 2020) (denying plaintiffs' motion for remand and finding that the court has subject matter jurisdiction over plaintiffs' claims under 28 U.S.C. § 1442(a)(1)); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (removal under the federal officer removal statute "promotes litigating federal defenses … in a federal forum so that 'the operations of the general government [are not] arrested at the will of one of [the states]'") (*quoting Tennessee v. Davis*, 100 U.S. 257, 263, 25 L.Ed. 648 (1879)).

6.    **Second**, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because plaintiff's alleged injuries occurred at least in part on a "federal enclave"—namely, a United States Air Force installation—and thus removal is proper under 28 U.S.C. § 1441. *See* (Ex A (Compl.)); *Jamil v. Workforce Resources, LLC*, 2018 WL 2298119 (S.D. Cal. May 21, 2018) ("Camp Pendleton is a federal enclave."); *see Haining v. Boeing Co.*, 2013 WL 4874975, at *2 (C.D. Cal. Sept. 11, 2013) (concluding Vandenberg AFB is a federal enclave); *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'").

## BACKGROUND

7.     The CAEv2 is an earplug with two insertable ends developed specifically for the needs of the U.S. military for use as hearing protection in noisy environments.  CAEv2 has a yellow end and green end.  Each end has a different purpose.  When the yellow end of the earplug is inserted, users can still hear nearby low-level sounds, like verbal communication, but receive protection from high-level impulse noise, like gunfire.  In contrast, when the green end of the earplug is inserted, CAEv2 acts like a traditional earplug, providing steady and continuous protection from both ambient and impulse noises.

8.     In the area of national defense, the U.S. military relies on close collaboration with private contractors to design and develop products, such as the CAEv2, and manufacture and supply those products in accordance with highly particular specifications balancing the multitude of operational and budgetary needs of equipping the nation's fighting forces.  This litigation involves a classic example of that military-contractor collaboration.

9.     CAEv2 was designed at the request of and in consultation with military audiologists, including Dr. Doug Ohlin.  Dr. Ohlin at the time served in the capacity of Program Manager, Hearing Conservation, U.S. Army Center for Health Promotion and Preventive Medicine.  Dr. Ohlin and his program directed Aearo to ensure that the CAEv2 would appropriately balance performance with military

operational needs for soldiers and military personnel. For example, Dr. Ohlin proposed the inclusion of the filter that was a key updated feature of the CAEv2.

10. Dr. Ohlin also required Aearo to shorten the CAEv2 and approved its final length. Aearo initially provided Dr. Ohlin with longer production samples, but Dr. Ohlin rejected these because they could not fit in a military-issued carrying case and interfered with the straps of soldiers' helmets. When Aearo provided Dr. Ohlin with shortened samples, he approved the product for bulk purchase by the military.

11. Dr. Ohlin's involvement continued following the military's decision to purchase and deploy the CAEv2. He provided Aearo with feedback from military personnel as to using the CAEv2 and developed training and instructions for military personnel.

12. In sum, the CAEv2 was launched at the request of, and in close coordination with, the U.S. military. The CAEv2's design reflects the direction and feedback of individuals acting on behalf of the U.S. military. The U.S. military purchased the CAEv2 and issued it to service members like plaintiffs precisely because the CAEv2 fulfilled the military's specifications and accomplished the military's goal of balancing hearing protection with operational needs.

## BASES FOR FEDERAL JURISDICTION AND REMOVAL

13. A defendant need only submit a short and plain statement that sets forth plausible allegations supporting the grounds of removal. *See* 28 U.S.C. § 1446(a)

(A defendant or defendants desiring to remove any civil action from a State court…
"containing a short and plain statement of the grounds for removal, together with a
copy of all process, pleadings, and orders served upon such defendant or defendants
in such action"); *see also Wickens v. Blue Cross of California, Inc.*, 2015 WL
3796272, at \*4 (S.D. Cal. June 18, 2015) ("A notice of removal must contain a 'short
and plain statement of the grounds for removal.' This requirement tracks the
pleading requirement in Federal Rules of Civil Procedure 8.") (citing *Dart Cherokee
Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014)); *see*; *Betzner v.
Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018).  The defendant is not required to
make evidentiary submissions.  *See Archuleta v. Avcorp Composite Fabrication,
Inc.*, 2018 WL 6382049, at \*2 (C.D. Cal. Dec. 6, 2018) (denying motion to remand
and proclaiming notice of removal need include only a plausible allegation
establishing federal jurisdiction; *see also Pretka v. Kolter City Plaza II, Inc.*, 608
F.3d 744, 754 (11th Cir. 2010) (a defendant may carry its removal burden through
factual allegations establishing jurisdiction); *Pudlowski v. The St. Louis Rams, LLC*,
829 F.3d 963, 964 (8th Cir. 2017) ("The Rams notice of removal did not need to be
accompanied by a submission of evidence.").  Instead, "jurisdictional allegations
control unless it is legally impossible for them to be true."  *Betzner*, 792 F.3d at
1014; *see Junhong v. Boeing Co.*, 792 F.3d 814, 815 (7th Cir. 2015) (rejecting notion

that federal jurisdiction hinges upon a high degree of certainty that jurisdictional facts exist); *Archuleta*, 2018 WL 6382049, at *2.

## I.   REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

14.    Removal is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. *See In re 3M*, 2020 WL 365617, at *6 (N.D. Fla. Jan. 22, 2020).

15.    Removal rights under this section are much broader than under the general removal statute, 28 U.S.C. § 1441. *See In re Commonwealth's Motion to Appoint Couns. Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 466-67 (3d Cir. 2015) ("Unlike the general removal statute, the federal officer removal statute is to be broadly construed in favor of a federal forum.") (internal quotations omitted); *Goncalves By and Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244-45 (9th Cir. 2017) ("Throughout our analysis, we pay heed to our duty to interpret Section 1442 broadly in favor of removal.") (citing *Durham*, 445 F.3d at 1252); *Ayo v. 3M Co.*, 2018 WL 4781145, at *6 (E.D.N.Y. Sept. 30, 2018) ("[W]hile removal under the general removal statute, 28 U.S.C. § 1441, is generally disfavored, removal under the federal officer removal statute is favored in the interest of public policy.") (internal citations and quotations omitted). Suits against defendants acting on behalf of federal officers "may be removed

despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of section 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Harris v. CBS Corp.*, 2019 WL 913619, at *2 (N.D. Cal. Feb. 25, 2019) (rejecting a narrow reading of the federal officer removal statute); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life and Health Ins. Co.*, 169 F.Supp.3d 1058, 1063 (S.D. Cal. 2016) (recognizing defendants enjoy "much broader removal rights under the federal officer removal statute than they do under the general removal statute…") (quoting *Leite v. Crane Co.,*, 749 F.3d 1117, 1122(9th Cir. 2014)). And a court analyzing removal under the federal officer statute "views the facts in the light most favorable to the defendants." *Ayo*, 2018 WL 4781145, at *6; *see Willis v. Buffalo Pumps, Inc.*, 2013 WL 1316715, at *3 (S.D. Cal. Mar. 29, 2013) (adopting standard set forth in *Hagen v. Benjamin Foster Co.*[2] "where defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense").

---

[2]   739 F.Supp.2d 770, 778 (E.D. Pa. 2010).

16.     "Federal officer removal is proper when the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense."[3] *Mesa v. California,* 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Durham*, 445 F.3d at 1251.   All requirements for removal under § 1442(a)(1) are satisfied here.

## A.     3M Is A "Person" Under The Federal Officer Removal Statute.

17.     3M is a "person" under the federal officer removal statute.   *See Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*, 2013 WL 3197071, at *2 (S.D. Cal. June 20, 2013) (noting corporations qualify as a "person" under § 1442(a)(1)); *see also Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (for purposes of § 1442(a)(1), the term "person" includes "'companies, associations, firms, [and] partnerships.'").

## B.     The "Acting Under" Requirement Is Satisfied.

18.     To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Jacks v. Meridian Resource Co., LLC*, 701

---

[3]   *See Goncalves*, 865 F.3d at 1244-45 (separating "acting under" and "causal connection" requirements).

F.3d 1224, 1230 (8th Cir. 2012) (holding that health insurer contracted by U.S. Office of Personnel Management was "acting under" a federal officer) (quoting *Watson v. Phillip Morris Co., Inc.*, 551 U.S. 142, 152 (2007)); *see also Anthem Blue Cross*, 169 F.Supp.3d at 1064 ("In addition, precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist* or to help *carry out*, the duties or tasks of the federal superior.") (internal citations omitted).   Moreover, the words "acting under" are to be interpreted broadly and must be construed liberally.   *Watson,* 551 U.S. at 147; *see also Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (same); *see also Goncalves*, 865 F.3d at 1244 ("Throughout our analysis, we pay heed to our duty to interpret Section 1442 broadly in favor of removal.") (citing *Durham*, 445 F.3d at 1252).   Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of-conduct was done at the specific behest of the federal officer or agency."   *Papp,* 842 F.3d at 813.   Instead, the relationship between a private person and the federal office or agency typically involves "subjection, guidance, or control."   *Anthem Blue Cross*, 169 F.Supp.3d at 1064.

19.     The "acting under" requirement is met here because Plaintiff directly challenges Defendant's alleged conduct in providing vital products "that, in the absence of Defendant, the Government would have had to produce itself."   *Isaacson*, 517 F.3d at 137.   The United States military recognizes the importance of providing

hearing protection to service members, like Plaintiffs, and undeniably would have produced and designed earplugs itself but for the marketplace, including 3M.  As such, 3M assisted the military in carrying out its task, while under government supervision, guidance, and control, in designing a set of combat-ready earplugs that balance both operational and safety needs.  *Anthem Blue Cross*, 169 F.Supp.3d at 1064.

20.    Defendants developed the CAEv2 under the direction of, and with significant, detailed involvement of, representatives of the U.S. military.  *See e.g. Ruppel,* 701 F.3d at 1181 (holding that defendant was "acting under" a federal officer because it "worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."); *see Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D. Cal. 1992) (noting "acting under" generally requires some aspect of direct and detailed control over defendant); *see also Fontalvo*, 2013 WL 3197071, at *3 (finding the Navy exercised direct and detailed control over the design and construction of the helicopter at issue); *Anthem Blue Cross*, 169 F.Supp.3d at 1065-66 (finding defendant "acted under" federal officer in assisting the government fulfilling the task of managing a federal employee health insurance program).

21.     As described above, the military's involvement went beyond merely establishing standards or guidelines.  Its involvement and control included detailed requests to modify operational features, such as ensuring the CAEv2 would fit in military-issued containers by shortening the stem.  The military dictated the color, material, and packaging of CAEv2.  Moreover, the military maintained direct control over CAEv2's design specifications, in order to balance operational and tactical needs by requiring the triple-flange, shortened nature of the earplug.  *See Fontalvo*, 2013 WL 3197071, at *3 (finding defendant "acted under" for purposes of federal officer removal where the alleged defects were designed according to detailed government specifications); *Baker v. Ail. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020) (finding "acting under" relationship existed, in part, due to "the compulsion to provide the product to the government's specifications"); *see also Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 251-52 (4th Cir. 2017) (finding defendant satisfied "acting under" requirement by manufacturing boilers for use on U.S. Navy vessels "under the Navy's strict specifications").   This direct, detailed, and continuous government control enabled Defendants to produce a product for the government, which, in the absence of the Defendants, would have produced itself.  *Anthem Blue Cross*, 169 F.Supp.3d at 1065-66.  Such involvement is quintessential activity "acting under" a federal officer. *See e.g. Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998)

(authorizing removal of a tort suit against private defense contractors that manufactured Agent Orange); *Fung*, 816 F.Supp. at 572.

### C.   The "Causation" Requirement Is Satisfied.

22.   Whether a defendant's actions were taken "under color of federal office… has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, citations omitted); *see also Betzner*, 910 F.3d at 1015 (the "acting under the color of federal authority" requirement," is "distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage—there must be a 'causal connection between the charged conduct and asserted official authority.'"). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.*; *see also Goncalves*, 865 F.3d at 1245-46 ("this meets the low bar that the causal-connection prong requires."). Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137 *(citing Acker,* 527 U.S. at 431-32 (1999) ("demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute");[4] *see also Leite*, 749

---

[4]   The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

F.3d at 1124 (noting courts credit defendant's theory of the case for purposes of establishing a causal connection).

23.    In 2011, Congress further expanded Section 1442 by amending section 2(b) to permit removal "for *or relating to* any acts under color" of federal office, so as to "to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (emphasis showing addition); *see also Goncalves*, 865 F.3d at 1245 ("The Blues need show only that the challenged acts' occurred because of what they were asked to do by the Government.") (internal citations and quotations omitted).

24.    "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original); *see Leite*, 749 F.3d at 1124 ("Such a [causal] nexus exists here because the very act that forms the basis of plaintiffs' claims… is an act that Crane contends it performed under the direction of the Navy."). Here, Plaintiff's claims arise from Aearo's design, production, and sale of CAEv2 to military specifications. Plaintiff avers that the design of the CAEv2 is defective. (Ex. A (Compl.)). But Aearo developed and designed the CAEv2 earplugs at the direction of federal officers, while performing its contractual duties. And the required specifications with respect to design are what gives rise to the purported defect. *See Anthem Blue Cross*, 169 F.Supp.3d at

1064 (denying motion to remand and finding a causal nexus where "the act that forms the basis of Plaintiff's claims-Defendants' failure to pay Plaintiff directly for the provided emergency services-is an act that Defendants performed under the administration of the Benefit Service Plan pursuant to OPM's [Office of Personnel Management] guidance and supervision).

25.     The same is true for Defendants' fitting and usage instructions. *See Leite*, 749 F.3d at 1124 (affirming district court's denial of motion to remand and finding a causal nexus because "the very act that forms the basis of plaintiffs' claims - Crane's failure to warn about asbestos hazards- is an act that Crane contends it performed under the direction of the Navy"); *see Goncalves*, 865 F.3d at 1245 ("Here, OPM [Office of Personnel Management] asked the Blues to administer the plan and to make 'reasonable efforts' to pursue known subrogation claims. This meets the low bar that the causal-connection prong requires."); s*ee also Ayo*, 2018 WL 4781145, at *9 (denying motion to remand and finding causal connection where the conduct complained of occurred because of what the government asked contractors to do); *see also Corley v. Long-Lewis, Inc.*, 688 F.Supp.2d 1315, 1334 (N.D. Ala. 2010) (finding a "causal nexus" where defendant designed turbines under the supervision of the Navy, according to its specifications).

26.     Further, even if Plaintiff were to assert that any alleged defect was the result of an act not specifically contemplated by the government contract, "it is

enough that the contracts gave rise" to the harm alleged.   *See Isaacson,* 517 F.3d at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Id. (citing Willingham,* 395 U.S. at 409.); *see also Leite*, 749 F.3d at 1124 (same).   Thus, any argument that CAEv2's alleged defect was not specifically directed by the government cannot defeat federal officer removal.   *See Ayo*, 2018 WL 4781145, at *9 ("To satisfy the causation requirement, Manufacturing Defendants need only show that the conduct at issue occurred during their performance of the government-directed action, even if the government did not call for the complained-of act.").

### D.     Defendants Have "Colorable" Federal Defenses.

27.     Defendants intend to assert federal defenses in response to Plaintiff's claims, including the government contractor defense.

28.     Courts around the county have held that the government contractor defense supports removal under § 1442(a)(1). *See, e.g., In re 3M*, 2020 WL365617, at *6 (N.D. Fla. Jan. 22, 2020); *Betzner*, 910 F.3d at 1015-16 (finding colorable government contractor defense supports removal under Section 1442); *Jacks,* 701 F.3d at 1234-35 (government contractor defense supports removal under § 1442); *Isaacson,* 517 F.3d at 139 (same); *Zeringue v. Crane Co.,* 846 F.3d 785 (5th Cir. 2017) (same); *McMahon v. Presidential Airways, Inc.,* 410 F. Supp. 2d 1189, 1200

(M.D. Fla. 2006) (both government contractor defense and combatant activities defenses supported removal under Section 1442); *Leite*, 749 F.3d at 1123 (government contractor defense supports removal under Section 1442); *Willis v. Buffalo Pumps, Inc.*, 2013 WL 1316715, at *3 (S.D. Cal. Mar. 29, 2013); *see Fung*, 816 F.Supp. 569 at 573 (denying motion to remand and finding defendant established colorable government contractor defense).

29.     A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable." *Jacks,* 701 F.3d at 1235. Courts will not "require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1)." *Id. (citing Willingham,* 395 U.S. at 406-07 ("[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed.")); *Anthem Blue Cross*, 169 F.Supp.3d at 1066 (same); *see also Sawyer*, 860 F.3d at 258 ("Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection.") (quoting *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999) (internal quotation omitted); *Jennings v. Bell Helicopter Texron, Inc.*, 2012 WL 12883239, at *3 (S.D. Cal. Oct. 23, 2012) (rejecting a narrow interpretation of colorable federal defense); *Fung*, 816 F.Supp. at 573; *see also California v. Scharff,*

2019 WL 117615, at *1 (S.D. Cal. Jan. 7, 2019) ("An old and well-established body of law governs federal officer removals under § 1442. The defense need not be shown to be meritorious or even likely to succeed in order for removal to be proper.") (internal citations omitted). As the Seventh Circuit explained in *Betzner*:

> The colorable federal defense requirement fulfills Article III jurisdiction and reflects Congress's intent to have federal defenses litigated in federal court. *Id.* at 1182. "Requiring the defense only be colorable, instead of 'clearly sustainable,' advances this goal" and "at this point, we are concerned with who makes the ultimate determination, not what that determination will be." Id. (internal citations omitted); *see also Willingham*, 395 U.S. at 407, 89 S.Ct. 1813 (A defendant invoking § 1442(a) "need not win his case before he can have it removed."); *Venezia*, 16 F.3d at 212 ("A federal defendant need not show that he is entitled to prevail in order to have access to the federal forum.") (emphasis in original).

30.     Additionally, at the removal stage, the inquiry is "purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co., 771* F.3d 113, 116 (2d Cir. 2014) (citing *Kircher v. Putnam Funds Trust,* 547 U.S. 633, 644 n. 12 (2006)); *Betzner*, 910 F.3d at 1016 (holding that "the district court erred in concluding that Boeing was required to submit evidence to support its removal allegations").[5] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."

---

[5]  *See also Kraus v. Alcatel-Lucent*, C.A. No. 18-2119, 2018 WL 3585008, at *2 (E.D. Pa. Jul. 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

*Hagen v. Benjamin Foster Co.,* 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010); *see Willis*, 2013 WL 1316715, at *3 (adopting standard laid out in *Hagen* where the Court views facts supplied by defendant in the light most favorable to defendant). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo,* 771 F.3d at 116 (quoting *Willingham,* 395 U.S. at 409); *see Leite*, 749 F.3d at 1123 ("Because plaintiffs have raised a factual attack on Crane's jurisdictional allegations, Crane must support its allegations with competent proof."); *see also Jennings*, 2012 WL 12883239, at *4 (noting defendants need only assert a colorable defense; not prove it); *Scharff*, 2019 WL 117615, at *1 (noting defense need not be shown to be even likely to succeed).

### 1.   Defendants Have A Colorable Government Contractor Defense.

31.   Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle,* 487 U.S. at 512; *Getz v. Boeing Co.*, 654 F.3d 852, 860-61 (9th Cir. 2011).

32.     Defendants have satisfied all of these elements for purposes of removal. First, Dr. Ohlin directed Aearo to introduce the allegedly defective feature of the CAEv2—its short length—in order to meet tactical military needs.  Dr. Ohlin then approved the length of the final product.    Second, the CAEv2 conform to government-approved specifications because it has the length that Dr. Ohlin approved.    Third, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring the CAEv2 earplugs.  The U.S. military was actively involved in back-and-forth discussions with Aearo in the development of the CAEv2 regarding its length and instructions for use.    Aearo's engineers discussed the challenges, and trade-offs, including the folding back of the flanges, in conforming the design of the CAEv2 to fit within the military's desired carrying cases and with its other equipment.  These facts are more than enough to support a "colorable" government contractor defense and removal under the federal officer statute.  *See Betzner*, 910 F.3d at 1016 (finding government contractor defense colorable where defendant provided plausible allegations it manufactured aircraft according to government specifications and government was aware of any potential hazards); *Sawyer*, 860 F.3d at 257, 259 (finding colorable government contractor defense where the Navy comprehensively mandated warnings with respect to the defendant's boilers);  *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 585 (9th Cir.

1996) (requiring a continuous exchange and back-and-forth dialogue to establish first *Boyle* prong); *Getz*, 654 F.3d at 861 ("When the government engages in a thorough review of the allegedly defective design and takes an active role in testing and implementing that design, *Boyle's* first element is met.").

33.    At minimum, this constitutes colorable evidence that the U.S. military generally "made a discretionary determination" regarding the requirements and design of the CAEv2's benefits against the alleged risks. *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *Ayo*, 2018 WL 4781145, at \*14 (holding removal proper under § 1442 because defendants presented "colorable evidence" that government was aware of alleged problems with product at issue); *see Betzner*, 910 F.3d at 1016 (finding government contractor defense colorable where defendant provided plausible allegations it manufactured aircraft according to government specifications); *see Fontalvo*, 2013 WL 3197071, at \*6 (finding colorable government contractor defense); *see also Albrecht*, 2011 WL 5109532, at \*5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *Agent Orange*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at \* 13.

## II.    THIS COURT HAS FEDERAL ENCLAVE JURISDICTION.

34.    In addition, removal of this action is proper because Plaintiff's claims almost certainly arose, at least in part, at a federal enclave—namely, a U.S. military facility.   Plaintiff alleges that he was issued the CAEv2 during his active duty military service, and used the CAEv2 during United States Air Force training exercises both stateside and deployed.   (Ex. A (Compl.))   To that extent, the claims are governed by federal law and are subject to this Court's federal question jurisdiction under 28 U.S.C. § 1331.   Thus, this action is removable under 28 U.S.C. § 1441(a).

35.    "A federal enclave is a portion of land over which the United States government exercises federal legislative jurisdiction."   *Brookhaven Sci. Assocs., LLC v. Donaldson,* No. 04 Civ. 4013(LAP), 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007) (internal quotation and citation omitted).   The Constitution confers on Congress the power "[t]o exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."   U.S. Const. art. I, § 8, cl. 17.   "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to

the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Surplus Trading Co. v. Cook,* 281 U.S. 647, 652 (1930).

36.     Because the United States exercises sole lawmaking authority over a federal enclave, the law applicable to that enclave is, by definition, federal law, although such federal law may incorporate state-law rules of decision. *See, e.g., Mater v. Holley,* 200 F.2d 123, 124 (5th Cir. 1952) ("[A]ny law existing in territory over which the United States has `exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law"); *accord Macomber v. Bose,* 401 F.2d 545, 546 (9th Cir. 1968) ("State law theretofore applicable within the [ceded] area was assimilated as federal law, to remain in effect until changed by Congress. Rights arising under such assimilated law, arise under federal law and are properly the subject of federal jurisdiction."); *Brookhaven Sci. Assocs.,* 2007 WL 2319141, at *5 ("[W]hen an area becomes a federal enclave, the state law in effect at the time of cession becomes federal law and is the applicable law unless Congress provides otherwise.").

37.     Federal courts have federal-question jurisdiction under 28 U.S.C. § 1331 for actions involving tort claims that arise on federal enclaves. *See, e.g., Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1034 (10th Cir. 1998) (movant properly removed case to federal court when case was removed based on movant's status as a "person acting under" a federal officer, and status of the Air Force base as a federal

enclave).  It follows that such actions, if originally filed in state court, may be removed to federal court under 28 U.S.C. § 1441(a). *See, e.g., Allison v. Boeing Laser Tech. Servs.,* 689 F.3d 1234, 1236 (10th Cir. 2012) (affirming grant of summary judgment on state employment law claims as barred by federal enclave doctrine after removal from state court); *Jamil v. Workforce Resources, LLC*, 2018 WL 2298119, at *4 (S.D. Cal. May 21, 2018) (denying motion to remand where majority of pertinent events took place at Camp Pendleton - a federal enclave); *Kerr v. Del. N. Cos., Inc.*, 2017 WL 880409, at *4 (E.D. Cal. Mar. 6, 2017) (finding federal jurisdiction where the complaint alleged that the events pertinent to the claim took place at a federal enclave); *see also In re High-Tech Employee Antitrust Litig.*, 856 F.Supp.2d 1103, 1125 (N.D. Cal. 2012) (holding the federal enclave doctrine applies when the locus in which the claim arose is the federal enclave itself); *see Haining*, 2013 WL 4874975, at *2  (denying motion to remand "It is well-settled, and both parties concede, that Vandenberg is a federal enclave under the federal government's exclusive legislative jurisdiction- and has been since 1943") (citing *Taylor v. Lockheed Martin Corp.*, 78 Cal.App.4th 472, 479-80, (2000)).

38.    While the complaint is silent as to what specific United States Military installation Plaintiff received and used CAEv2, Plaintiff does concede that he he used the CAEv2 during his Air Force service during training drills and during live combat, both while stateside and on deployment.  (Ex. A (Compl.)).  The military installation

that Plaintiff received CAEv2 in connection with this active duty service likely qualifies as a federal enclave given that Plaintiff admits he wore and used CAEv2 during active duty training and deployment. *See Jamil*, 2018 WL 2298119, at *2 (inferring from Complaint that some of the alleged events occurred at Camp Pendleton, a federal enclave, and denying motion to remand). Accordingly, this Court has subject matter jurisdiction over the action, and removal of the action is proper under 28 U.S.C. § 1441(a).

## CONCLUSION

**WHEREFORE,** Defendants respectfully request that this action in the Superior Court, State of Delaware be removed to this Court, and that no further proceedings be had in state court.

*[SIGNATURE BLOCK ON NEXT PAGE]*

Respectfully submitted,

**Manning Gross + Massenburg LLP**

*/s/ Irina N. Luzhatsky*
Jason A. Cincilla (DE Bar ID No. 4232)
Amaryah K. Bocchino (DE Bar ID No. 4879)
Ryan W. Browning (DE Bar ID No. 4989)
William B. Larson, Jr. (DE Bar ID No. 5627)
Irina N. Luzhatsky (DE Bar ID No. 6052)
1007 North Orange Street, Suite 711
Wilmington, Delaware, 19801
302.657.2100
jcincilla@mgmlaw.com
abocchino@mgmlaw.com
rbrowning@mgmlaw.com
wlarson@mgmlaw.com
iluzhatsky@mgmlaw.com
   *Attorneys for Defendants*
   *3M Company and Aearo Technologies LLC*

Dated: April 14, 2022
*5050715*