# Exhibit A

EFiled: Mar 28 2022 11:47AM EDT
Transaction ID 67430238
Case No. N22C-03-205 WCC

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

JESUS REVILLA & RITA REVILLA,

      Plaintiffs,

      v.

3M COMPANY and
AEARO TECHNOLOGIES, LLC,

      Defendants.

C.A. No.:

JURY TRIAL DEMANDED

COME NOW, the above-captioned Plaintiffs, JESUS REVILLA & RITA REVILLA, (hereinafter, "Plaintiff") brings this complaint and Demand for Jury Trial by and through his attorneys JACOBS & CRUMPLAR, P.A., ROSEN INJURY LAWYERS, and GREEN & SCHAFLE, LLC, and complains and alleges against Defendants 3M Company and Aearo Technologies, LLC (hereinafter "Defendants") as follows:

## A.    BACKGROUND

1.    This is a product liability action related to a defective earplug manufactured and sold by Defendants. Plaintiff used Defendants' dual-ended Combat Arms™ Earplugs – (Version 2 CAEv.2) while in training and/or deployed on active military duty and, as a result of its defective condition, now suffers from hearing loss and tinnitus. Defendants knew the earplugs were defective prior to selling them because they falsified test results and misrepresented their performance specifications to qualify for a multi-million dollar per-year contract with the United States.

## B.    PARTIES, JURISDICTION AND VENUE

2.    Plaintiffs Jesus Revilla and Rita Revilla are residents of Magnolia, Kent County, Delaware.  Mr. Revilla joined the United States Air Force in 1997 and was honorably discharged

in 2020.  Before joining the United States Air Force, Plaintiff had no signs or symptoms of hearing loss or tinnitus.  Plaintiff wore the 3M dual-ended earplugs during live combat and during field training exercises both stateside and while deployed.  Plaintiff was never instructed to fold back the third flange on the opposite side of the use end of the Combat Arms™ earplug.  Plaintiff was diagnosed with hearing loss and tinnitus.

3.      Defendant 3M is a Delaware corporation with its principal place of business in St. Paul, Minnesota.   Among  other  things,  Defendant  is  in  the  business  of  designing, manufacturing, and selling worker safety products, including hearing protection.

4.      Defendant Aearo Technologies LLC is a limited liability company formed in Delaware with its principal place of business in Indiana. Aearo Technologies LLC was responsible for researching, developing, designing, testing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third-parties or related entities, the dual-ended Combat Arms™ Earplugs – (Version 2 CAEv.2).

5.      Because both Defendants are incorporated in the state of Delaware, under United States Supreme Court law they are at home in this state and therefore subject to general jurisdiction in this state.  Defendants should have reasonably foreseen that its conduct might result in it being haled in the courts of this state.  The exercise of personal jurisdiction over these Defendants comports with due process and traditional notions of fair play and substantial justice.

### C.     FACTUAL ALLEGATIONS

6.      Aearo Technologies was the global market leader in hearing and eye protection and was based in Indianapolis, Indiana. Aearo Technologies developed, marketed, and sold the Combat Arms™ earplug until being acquired by 3M in 2008 for $1.2 billion.

7.      Afterwards, 3M hired Aearo's employees and maintains it as a separate operating unit. Post-acquisition, the Combat Arms™ earplugs have been marketed and sold under the 3M brand. Because 3M acquired both the assets and liabilities of Aearo, Aearo and 3M are used interchangeably and all allegations against Aearo are directed as a matter of law against 3M.

8.      Aearo developed dual-ended, non-linear (selective attenuation) Combat Arms™ earplugs for the specific purpose of providing servicemen a single set of earplugs that provide two options for hearing attenuation depending on how they are worn:



9.      The earplugs can be worn in an open or "unblocked" position (yellow end in) to block, or at least significantly reduce, loud impulse sounds commonly associated with military service, while still allowing the serviceman to hear quieter noises such as commands spoken by fellow servicemen and approaching enemy combatants. Alternatively, the earplugs can be worn in

a closed or "blocked" position (green end in) to block, or at least significantly reduce, all sounds, i.e., operate as ordinary earplugs.

10.     Based on the supposed technological design and qualities of the Combat Arms™ earplugs, Defendants won a series of Indefinite-Quantity Contracts ("IQCs") to be the exclusive supplier of selective attenuation earplugs to the U.S. military between 2003 and 2012.

11.     To win these IQCs, Defendants represented that the Combat Arms™ earplugs would meet specific performance criteria established by the U.S. Government as a prerequisite for bidding on the IQC for earplugs.

12.     At all times, Defendants' performance representations were false; and Defendants knew them to be false. In fact, Defendants knew these earplugs were defective and did not work as they were supposed to as early as 2000—years before Defendants became the exclusive supplier of selective attenuation earplugs to the U.S. military.

13.     At all relevant times, the Combat Arms™ earplugs had a dangerous design defect that caused them to imperceptibly loosen in the wearer's ear, thus allowing damaging sounds to enter the ear canal around the outside of the earplug. Specifically, the basal edge of the third flange of the non-inserted end of the earplug is prone to press against some wearers' ear canals and fold back to its original shape, thereby loosening the seal in their ear canals. Because the earplug is symmetrical, the defect exists regardless of which end is inserted into the ear.

14.     Aearo learned of this design defect when it completed testing of the Combat Arms™ earplugs. In fact, in February 2000, after the Combat Arms™ earplugs first failed the specification testing, Aearo employees rolled back the non-inserted yellow flanges to mitigate the loosening effect of the defect.

15.     The value and effectiveness of earplugs has been standardized under federal law through a Noise Reduction Rating ("NRR"). The testing and labeling of earplugs such as the Combat Arms™ earplugs to achieve an NRR is governed by federal regulations promulgated by the Environmental Protection Agency ("EPA") pursuant to the Noise Control Act, 42 U.S.C. § 4901 et seq. Specifically, 40 C.F.R. §211.206-1 provides:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19-1974.

16.     Further, 40 C.F.R. §211.204-4(e) requires that specific supporting information accompany hearing protection devices sold in the United States:

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location.... Instructions as to the proper insertion or placement of the device.

(Emphasis added).

### A.     Aearo Deliberately Falsified Test Results for the Combat Arms™ Earplugs

17.     The NRR is supposed to represent the amount of sound attenuation experienced by a test group under conditions specified by the federal Noise Control Act's testing methodology.

18.     In addition, the U.S. military may only purchase earplugs that meet the testing standards established by the U.S. Army Public Health Command, Army Hearing Program, or equivalent standards that may be established by other branches of the military. Any such standards are tied to the NRR achieved under the EPA regulations.

19.     In or around January 2000, Aearo began NRR testing on each end of the Combat Arms™ earplug. Rather than use an independent test lab, Aearo performed its testing in-house at its E-A-RCAL laboratory (also now owned by 3M). Aearo selected 10 test subjects, including

some of its own employees. Aearo's test protocol involved testing: (1) the subject's hearing without an earplug; (2) the subject's hearing with the open/ unblocked (yellow) end of the Combat Arms™ earplug inserted; and (3) the subject's hearing with the closed/blocked (green) end of the Combat Arms™ earplug inserted.

20.     Aearo's own employees monitored the test results as the tests were performed, which allowed them to stop the testing at any point if they were not achieving the desired NRR. This violated the ANSI S3.19-1974 testing protocol. In fact, Aearo stopped the test of the green end of the Combat Arms™ earplug inserted after only 8 of the 10 subjects had been tested. At that point, the Combat Arms™ earplugs were failing expectations miserably. Aearo was expecting to achieve an NRR of 22 with the green end inserted, but in fact was on target to receive a 10.9 rating based on the experiences of the first eight subjects. These disappointing results were caused by the design defect described above.

21.     Despite stopping the test on the green end of the Combat Arms™ earplug, Aearo had the remaining two test subjects complete the test with respect to the yellow end of the Combat Arms™ earplugs only because Aearo liked the low NRR rating the test was indicating to that point. After completion, however, testing of the yellow end resulted in an NRR of -2, which falsely suggested that the earplugs actually amplified sound. Aearo thus knew that the test was inaccurate and needed to be repeated. Instead, Aearo changed the -2 NRR to a 0 NRR, and used that rating on its labels.

22.     After prematurely stopping the NRR test of the green end of the Combat Arms™ earplug, Aearo investigated the disappointing test results and discovered that because the stem of

the earplug was so short, it was difficult to insert the earplug deep enough into the wearer's ear canal to obtain a proper fit as required by ANSI S3.19-1974, Section 3.2.3.[1]

23.    Aearo also discovered that when the green end of the Combat Arms™ earplug was inserted into the ear using the standard fitting instructions, the basal edge of the third flange of the yellow end pressed against the wearer's ear and folded backward. When the inward pressure of the earplug was released, the yellow flanges tended to return to their original shape, thereby loosening the earplug, often imperceptibly to the wearer. And, because the Combat Arms™ earplug was symmetrical, this same problem occurred when the earplug was reversed.

24.    Aearo manipulated the test protocol by instructing the test subjects to fold the flanges on the non-inserted end of the earplug back before inserting it into the ear.

25.    Using the manipulated fitting instructions, Aearo re-tested the green end of the Combat Arms™ earplugs starting in February 2000. During this re-test of the green end, test subjects folded back the yellow flanges of the earplug (essentially elongating the too-short defective stem) to allow them to insert the earplugs deeper into their ears to obtain a proper fit. Because the yellow flanges were folded back, the basal edge of the third flange no longer pressed against the subject's ear canal, and thus did not cause the earplug to loosen during the testing. Using this manipulated test protocol, Aearo achieved a 22 NRR on the green end of the Combat Arms™ earplug.

26.    Due to the symmetrical nature of the Combat Arms™ earplugs, the design defect that affected the fit of the green end similarly affected the fit of the yellow end. The fact that Aearo's testing of the yellow end resulted in a -2 NRR meant that the earplugs did not provide a

---

[1] (Ex. A, Acoustical Society of America Standard Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs (ASA STD 1-1975)).

proper fit (as required by ANSI S3.19-1974, Section 3.2.3) between the ear canal of at least some

of the subjects and the earplugs. As a result, some subjects had large standard deviations across

trials on the yellow end test, which suppressed the NRR rating.

27.     Nevertheless, Aearo did not re-test the yellow end using the manipulated fitting

instructions like it did on the green end, i.e., folding back the flanges on the green end of the

earplug before inserting the yellow end into the ear.

28.     Aearo did not re-test the yellow end because it knew that it would not be able to

obtain a 0 NRR (much less the facially invalid -2 NRR) and further knew the 0 NRR was a major

selling point to the U.S. military. An accurate NRR for the yellow end, which would have been

higher than 0, would have rendered the Combat Arms™ earplug less attractive to the U.S. military

because the military would have known that the earplugs would impair communication.

29.     Moreover, the defect in the Combat Arms™ earplugs is more likely to manifest

itself during military activities than in a lab where the NRR tests are performed over the span of

just a few minutes and the head of the test subject remains virtually motionless during the test.

Servicemen, on the other hand, may wear the earplug for an extended period of time and are more

active than test subjects in a lab.

30.     Because the defect was imperceptible to the wearer, Defendants' design defect went

undetected for more than a decade by the U.S. military and those who wore them. It is thus not

surprising that hearing damage is now the largest ongoing medical cost the military incurs each

year.[2]

_____

[2] (Ex. B, David E. Gillespie, *Researchers Evaluate True Effects of Hearing Loss for Soldiers* (Dec.
16, 2015), available at http://www.army.mil/article/160050/Researchers_evaluate_true_effects_of_hearing_loss
for_soldiers/ (last accessed Jan. 16, 2019). The VA thus spends more than $1 billion per year to treat hearing damage
suffered by more than 800,000 servicemen. (*Id.*; *see also* Ex. C, Kay Miller, *Hearing loss widespread among post-
9/11 veterans*, The Center for Public Integrity (Aug. 29, 2013),available at
http://www.publicintegrity.org/2013/08/29/13283/hearing-loss-widespread-among-post911-veterans (last visited Jan.
16, 2019) ("The most-widespread injury for [post-9/11] veterans has been hearing loss and other auditory

### B.    Defendants' False Certifications to the U.S. Military

31.    In 2003, Aearo submitted a bid in response to the U.S. military's Request for Proposal ("RFP") to supply large quantities of Combat Arms™ earplugs. The RFP required bidders to certify that the earplugs complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202. In its bid, Aearo certified the Combat Arms™ earplugs complied with the Salient Characteristics of MPID, even though Aearo knew that certification to be false.

32.    The pertinent Salient Characteristics of MPID in each RFP, in relevant part, were:

2.1.1. Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.

2.2.2 The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19....

2.4. Workmanship. The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability.

2.5. Instructions. Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit....[3]

33.    Aearo knew that its test protocol did not comply with ANSI S3.19 but nevertheless certified that its testing was fully compliant with the U.S. military's specifications.

34.    Aearo also falsely certified that it provided accurate "instructions explaining the proper use and handling of the ear plugs." Aearo knew when it did so that its own testing had revealed a design defect that needed modified fitting instructions to ensure a proper fit that would deliver the promised NRR. At no time did Defendants disclose the modified fitting instructions to the U.S. military—even after winning the bid.

---

complications.... Hearing maladies cost more than $1.4 billion in veterans' disability payments annually, according to first year 2010 data from the Hearing Center of Excellence, a part of the Department of Defense.")).
[3] (Ex. D, Solicitation No. SP0200-06-R-4202, at 41-42).

35.     Pursuant to Section 2.4 of the MPID, Aearo was required to certify that the "ear plugs shall be free from all defects that detract from their appearance or impair their serviceability." (Ex. D at 41-42). Despite Aearo knowing since 2000 that its Combat Arms™ earplugs suffered from a design defect, Aearo certified to the U.S. military that its earplugs had no defects.

36.     Based on its facially invalid test results, Aearo falsely reported to the U.S. military that the yellow end of its Combat Arms™ earplugs had a 0 NRR, which would allow servicemen to freely communicate with their fellow servicemen and avoid any impairment to hear enemy combatants.

37.     Aearo also certified that the green end of its Combat Arms™ earplugs had a 22 NRR, even though Aearo did not disclose the modified fitting instructions necessary to achieve the hearing protection afforded by a 22 NRR.[4]  Nothing in these fitting instructions disclosed that it was necessary to fold back the flanges of the opposite end to ensure a proper fit and achieve the promised NRR. By failing to provide this disclosure, Aearo falsely overstated the amount of hearing protection afforded by the green end of the earplug and overstated the benefits of the yellow end of the earplug.

38.     Based on Aearo's false representations, its bid was the prevailing bid and Aearo entered into the first of a series of IQCs later that year making it the exclusive provider of selective attenuation earplugs to the U.S. military.

39.     In subsequent years in response to additional RFPs, Defendants re-certified that the Combat Arms™ earplugs met the MPID criteria, even though Defendants knew that to be false.

---

[4] (*See* Ex. E, Combat Arms Earplugs Instructions).

40.     In total, the U.S. military purchased enough Combat Arms™ earplugs to provide one pair to every serviceman deployed each year in major foreign engagements from 2003 through 2015.[5]

41.     Defendants continued to sell the Combat Arms™ earplugs to the U.S. military until late 2015, at which time Defendants discontinued the earplug.[6]

42.     Defendants' misrepresentations about the benefits and protections provided by the Combat Arms™ earplugs caused Plaintiff to suffer hearing loss and tinnitus.

43.     At all times after 3M's acquisition of Aearo, 3M knew of, conspired with, and was complicit in Aearo's wrongful acts in marketing and selling the Combat Arms™ earplugs without disclosing the defect or the modified fitting instructions.

## TOLLING OF STATUTES OF LIMITATIONS

44.     Under the Servicemembers Civil Relief Act, the period of Plaintiff's military service may not be included in computing any statute of limitations applicable herein. See 50 U.S.C. § 3936.

45.     Plaintiff could not, by the exercise of reasonable diligence, have discovered Defendants' wrongful acts as the cause of his injuries at an earlier time, because, at the time of these injuries, the cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

---

[5] See Ex. F, McIlwain, D. Scott et al., Heritage of Army Audiology and the Road Ahead: The Army Hearing Program, AMERICAN JOURNAL OF PUBLIC HEALTH, Vol. 98 No. 12 (Dec. 2008)).

[6] (Ex. G, Discontinuation: 3M Combat Arms Earplugs Version 2 (Nov. 17, 2015)). Defendants did not recall the earplugs despite discontinuing them due to the design defect.

46.    Further, the running of the statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the risks associated with the defects in the Combat Arms™ earplugs.

47.    As a result of Defendants' actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence that he had been exposed to the defects and risks alleged herein, and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

48.    Through Defendants' affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Combat Arms™ earplugs, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continued to misrepresent the defective nature of the Combat Arms™ earplugs.

## COUNT I: STRICT PRODUCTS LIABILITY – DESIGN DEFECT

49.    Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

50.    Defendants are the manufacturers and sellers of the defective Combat Arms™ earplugs.

51.    The defective Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defectively designed in that the design of the earplug caused it to loosen in the wearer's ear, which allowed damaging sounds to enter the ear canal.

52.    The defective Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective and unreasonably dangerous for their ordinary and expected use because they did not stop the damaging loud noises of military use that can cause hearing loss or tinnitus.

53.    The defective Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective and not reasonably safe for its intended use.

54.    Defendants knew of the defect in the Combat Arms™ earplugs.

55.    No reasonably prudent manufacturer would design, distribute, and sell an earplug with the knowledge that Defendants had, namely that the stem of the earplug was too short to fit correctly in many people's ears and that if not fitted correctly the earplugs would not guard against loud impulse noises and could cause hearing loss and tinnitus.

56.    The defective Combat Arms™ earplugs that the Defendants manufactured, distributed, and sold were delivered to Plaintiff without any change in their defective condition and were used by Plaintiff in the manner expected and intended.

57.    Defendants owed a duty of care to Plaintiff to design, manufacture, and sell earplugs that met the specified performance criteria and were otherwise fit for use by servicemen to protect them from damaging noises typically incurred in military service. Defendants breached this duty.

58.    Defendants owed a duty of care to Plaintiff to design and sell earplugs that were fit for use in military service and that performed according to the specifications that Defendants certified the Combat Arms™ earplugs would meet. Defendants breached this duty.

59.    Defendants owed a duty of care to Plaintiff to design and sell earplugs that were safe when used for their intended purpose; i.e., when in the presence of loud impulse sounds. Defendants breached this duty.

60.    Plaintiff suffered injury and damage as a direct and proximate result of the defective and unreasonably, unsafe, dangerous condition of the Combat Arms™ earplugs that the Defendants manufactured, distributed, and sold.

## COUNT II: STRICT PRODUCT LIABILITY – FAILURE TO WARN

61.     Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

62.     Defendants are the manufacturers and sellers of the defective Combat Arms™ earplugs.

63.     The defective Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective because the earplugs did not come with adequate warnings, instructions, or labels.

64.     The defective Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective because Defendants failed to warn, failed to provide instructions, and failed to provide an adequate label that included the modified fitting instructions necessary for the earplug to fit correctly in the wearer's ear and create the seal necessary to block out the damaging sounds.

65.     Defendants had a duty to manufacture, design, and sell the Combat Arms™ earplugs with reasonable and due care for the safety and well-being of wearers, including Plaintiff. Defendants breached that duty.

66.     Defendants had a duty to provide adequate warnings and/or instructions to prevent the risks associated with the Combat Arms™ earplugs when worn in the ordinary course. Defendants breached that duty.

67.     It was foreseeable to Defendants that the Combat Arms™ earplugs would be unreasonably dangerous if distributed without the warning regarding the risks of damage to the ear with an improper fit and/or modified fitting instructions.

68.     Not only was it foreseeable, it was foreseen by Defendants. During testing, Defendants discovered that because the stem of the earplug was so short, it was difficult to insert the earplug deep enough into the wearer's ear canal to obtain a proper fit.

14

69.     Defendants also discovered that when the green end of the Combat Arms™ earplug was inserted into the ear using the standard fitting instructions, the basal edge of the third flange of the yellow end pressed against the wearer's ear and folded backward. When the inward pressure of the earplug was released, the yellow flanges tended to return to their original shape, thereby loosening the earplug, often imperceptibly to the wearer. And, because the Combat Arms™ earplug was symmetrical, this same problem occurred when the earplug was reversed.

70.     Defendants had a post-sale duty to warn of the above alleged product-related defects and risks because Defendants knew or reasonably should have known that the Combat Arms™ earplug posed a substantial risk of harm to servicemen, including Plaintiff; the servicemen who used the Combat Arms™ earplug can reasonably be assumed to be unaware of the risk of harm caused by the above-alleged defects because said defects were imperceptible; a warning or instruction showing how to correctly and safely use the Combat Arms™ earplug could have been effectively communicated to and acted upon by the servicemen to whom a warning or instruction might be provided; and the risk of harm, including but not limited to hearing loss in servicemen, is sufficiently great to justify the slight burden of providing a warning or instruction. Defendants breached this duty by failing to provide a post-sale warning or instruction.

71.     The Combat Arms™ earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Combat Arms™ earplugs would allow damaging sounds to bypass the earplug thereby posing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

72.     The warnings and instructions that accompanied the Combat Arms™ earplugs failed to provide the level of information that an ordinary wearer would expect when using the Combat Arms™ earplugs in a manner reasonably foreseeable to Defendants.

73.     Had Plaintiff received a proper or adequate warning as to the risks associated with the use of the Combat Arms™ earplugs in the manner contemplated by Defendants, he would not have used them.

74.     Additionally, and/or alternatively, had Plaintiff received the modified fitting instructions that were used by Defendants during the testing, which were not disclosed to Plaintiff, Plaintiff would have followed the modified fitting instructions to ensure a proper seal to prevent damaging sounds from entering the ear canal.

75.     Plaintiff suffered injury and damage as a direct and proximate result of the use-defectiveness and Defendants' failures to warn and/or provide adequate instructions regarding the dangerous condition of the Combat Arms™ earplugs that the Defendants manufactured, distributed, and sold.

## COUNT III: NEGLIGENCE

76.     Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

77.     Defendants had a duty to each use their professional expertise and exercise that degree of skill and learning ordinarily used under the same or similar business by a person or entity in Defendants' business of designing, developing, testing, manufacturing, marketing, and distributing hearing protection devices.

78.     Defendants further had a duty to comply with the certifications made to the U.S. government about the qualities and performance characteristics of the Combat Arms™ earplugs. Plaintiff is among the class of persons designed to be protected by these regulations and certification standards. He was a foreseeable plaintiff to Defendants.

79.     Defendants breached these duties by failing to exercise the required degree of care in designing, developing, testing, manufacturing, marketing, and distributing hearing protection devices in a manner to provide the specified level of hearing protection.

80. Defendants chose to manufacture and sell defective, dangerous hearing protection devices products without warning, despite manufacturers and sellers having a duty to warn consistent with Restatement (Second) of Torts §395 and §388;

81.     The damages suffered by Plaintiff was or should have been reasonably foreseeable to Defendants.

82.     Plaintiff was damaged by Defendants' conduct, including but not limited to damage to his hearing.

83.     Defendants' breaches are a direct and proximate cause of the injuries and damages suffered by Plaintiff in an amount not yet fully determined, but in excess of $50,000, exclusive of costs and interest. Plaintiff is entitled to recover damages and other relief as available, at law or equity, as a direct and proximate result of Defendants' conduct.

**COUNT IV: BREACH OF EXPRESS WARRANTIES**

84.     Plaintiff incorporates by references the paragraphs above as if fully set forth herein.

85.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and/or otherwise released into the stream of commerce the 3M dual-ended earplugs, in the course of the same, directly advertised or marketed the product to the U.S. Military and its servicemen and servicewomen, including Plaintiff.

86.     Defendants expressly warranted that the 3M dual-ended earplugs were safe, provided a certain level of protection, and were well accepted by users.

87.     The 3M dual-ended earplugs do not conform to these express representations because 3M dual-ended earplugs are not safe and were defective, and this was not warned about by the Defendants.

88.     As a direct and proximate result of the breach of said warranties, Plaintiff suffered and continues to suffer injuries and damages.

89.     Plaintiff relied on the express warranties of Defendants herein.

90.     Members of the U.S. Military relied upon the representations and warranties of the Defendants for use of 3M dual-ended earplugs in providing the 3M dual-ended earplugs.

91.     The Defendants herein breached the aforesaid express warranties, as the 3M dual-ended earplugs were defective.

92.     Defendants expressly represented to Plaintiff, the U.S. Military, and its service men and women that the 3M dual-ended earplugs ere safe and fit for use for the purposes intended, that they were of merchantable quality, that they provided a certain level of hearing protection for the user.

93.     Defendants knew or should have known that, in fact, said representations and warranties were false, misleading an untrue in that the 3M dual-ended earplugs were not safe and fit for the use intended and, in fact, produced series injuries to the users that were not accurately identified and represented by Defendants.

94.     As a result of the foregoing acts and omissions, Plaintiff has suffered injuries and damages as alleged herein.

**COUNT V: BREACH OF IMPLIED WARRANTIES**

95.     Plaintiff incorporates by references the paragraphs above as if fully set forth herein.

96.     At all times herein mentioned, the Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and/or otherwise released into the stream of commerce the 3M dual-ended earplugs, in the course of the same, directly advertised or marketed the product to the U.S. Military and its servicemen and servicewomen, including Plaintiff.

97.     At the time Defendants marketed, sold and distributed 3M dual-ended earplugs for use by Plaintiff, Defendants knew of the use for which they were intended and impliedly warranted the earplugs to be of merchantable quality and safe and fit for such use.

98.     The Defendants impliedly represented and warranted to the users of the 3M dual-ended earplugs and the U.S. Military and its service men and women that the 3M dual-ended earplugs were safe and of merchantable quality and fit for the ordinary purpose for which they were to be used.

99.     Said representations and warranties were false, misleading and inaccurate in that the 3M dual-ended earplugs were unsafe, unreasonably dangerous, improper, defective, and not of merchantable quality.

100.    Plaintiff relied on the express warranties of Defendants herein.

101.    Members of the U.S. Military relied upon the representations and warranties of the Defendants for use of 3M dual-ended earplugs in providing the 3M dual-ended earplugs.

102.    Plaintiff, the U.S. Military and its service men and women reasonably relied upon the skill and judgment of Defendants as to whether the 3M dual-ended earplugs were of merchantable quality and safe and fit for their intended use.

103.    As a result of the foregoing acts and omissions, Plaintiff has suffered injuries and damages as alleged herein.

## COUNT VI: FRAUDULENT MISREPRESENTATION

104.    Plaintiff incorporates by references the paragraphs above as if fully set forth herein.

105.    The Defendants falsely and fraudulently represented to Plaintiff, the U.S. Military and its service men and women and the public in general, that said product, 3M dual-ended earplugs, had been tested and was found to be safe and effective to reduce the risk of loud damaging noises.

106.    Those representations made by Defendants were, in fact, false.

107.    When said representations were made by Defendants, they knew those representations to be false and they willfully, wantonly and recklessly disregarded whether the representations were true.

108.    These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiff, the U.S. Military and its service men and women and the public in general, and were made with the intent of inducing the Plaintiff, the U.S. Military and its service men and women and the public in general, to recommend, purchase, distribute, and use said device, 3M dual-ended earplugs, for use to reduce the risk loud damaging noises, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

109.    At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff used the 3M dual-ended earplugs, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

110.    In reliance upon said representations, the Plaintiff was induced to and did use the 3M dual-ended earplugs, thereby sustaining injuries and damages.

111.     Defendants knew and were aware or should have been aware that the 3M dual-ended earplugs had not been sufficiently or properly tested, were defective in nature, and that they lacked adequate and sufficient warnings or instructions.

112.     Defendants knew or should have known that the 3M dual-ended earplugs had a potential to, could, and would cause injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and down-played warnings.

113.     Defendants brought 3M dual-ended earplugs to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff.

114.     As a result of the foregoing acts and omissions, Plaintiff has suffered injuries and damages as alleged herein.

## COUNT VII: FRAUDULENT CONCEALMENT

115.     Plaintiff incorporates by references the paragraphs above as if fully set forth herein.

116.     At all times during the course of dealing between Defendants and Plaintiff and the U.S. Military and its service men and women, Defendants misrepresented the safety of the 3M dual-ended earplugs for their intended use.

117.     Defendants knew or were reckless in not knowing that their representations were false.

118.     In representations to Plaintiff and U.S. Military and its service men and women, Defendants fraudulently concealed and intentionally omitted the following material information:

      (a) that the 3M dual-ended earplugs were not as safe for reducing the risk of dangerous loud noises;

      (b) that Defendants deliberately falsified the testing of the 3M dual-ended earplugs;

      (c) that the 3M dual-ended earplugs did not meet specific performance criteria established and required by the U.S. Government;

21

(d) that Defendants were aware that the 3M dual-ended earplugs did not properly function to reduce the risk of dangerous loud noises;

(e) that 3M dual-ended earplugs were defective;

(f) warnings for the 3M dual-ended earplugs;

(g) instructions for the 3M dual-ended earplugs;

(h) that the 3M dual-ended earplugs were manufactured negligently;

(i) that the 3M dual-ended earplugs were manufactured defectively;

(j) that the 3M dual-ended earplugs were manufactured improperly;

(k) that the 3M dual-ended earplugs were designed negligently;

(l) that the 3M dual-ended earplugs were designed defectively; and,

(m) that the 3M dual-ended earplugs were designed improperly.

119.    Defendants were under a duty to disclose to Plaintiff, the U.S. Military and its service men and women, the defective nature of the 3M dual-ended earplugs, including but not limited to the heightened risks of dangerous loud noises.

120.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause injuries and damages, and hence, cause damage to persons who used the 3M dual-ended earplugs, including the Plaintiff in particular.

121.    Defendants' concealment and omissions of material facts concerning the safety of the 3M dual-ended earplugs was made purposefully, willfully, wantonly, and recklessly, to mislead Plaintiff and the U.S. Military and its service men and women into reliance, continued use of the U.S. Military and its service men and women, and actions thereon, and to cause them to purchase, distribute, and use the 3M dual-ended earplugs.

122.    Defendants knew that Plaintiff, and the U.S. Military and its service men and women had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the 3M dual-ended earplugs, as set forth herein.

123.    Plaintiff, as well as the U.S. Military and its service men and women relied on facts revealed which negligently, fraudulently and purposefully did not include facts that were concealed and omitted by Defendants.

124.    As a result of the foregoing acts and omissions, the Plaintiff has suffered injuries and damages as alleged herein.

## COUNT VIII: NEGLIGENT MISREPRESENTATION

125.    Plaintiff incorporates by references the paragraphs above as if fully set forth herein.

126.    Defendants had a duty to represent to the Plaintiff, the U.S. Military, its service men and women, and the public in general that said product, the 3M dual-ended earplugs, had been tested and found to be safe and effective to reduce the risk of dangerous loud noises.

127.    The representations made by Defendants were, in fact, false.

128.    Defendants failed to exercise ordinary care in the representation of the 3M dual-ended earplugs, while involved in its manufacture, sale, testing, quality assurance, quality control, and distribution of said product into interstate commerce, in that Defendants negligently misrepresented the 3M dual-ended earplugs' high risk of unreasonable, dangerous side effects.

129.    Defendants breached their duty in representing the 3M dual-ended earplugs' serious side effects to the medical and healthcare community, to the Plaintiff, the U.S. Military, its service men and women, and the public in general.

130.   As a result of the foregoing acts and omissions, the Plaintiff has suffered injuries and damages as alleged herein.

### COUNT IX: FRAUD

131.   Plaintiff incorporates by references the paragraphs above as if fully set forth herein.

132.   Defendants conducted research, or lack thereof, and used 3M dual-ended earplugs as part of their research.

133.   As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiff, the U.S. Military, its service men and women, and the public in general, that the 3M dual-ended earplugs were safe and effective for use as a means to reduce the risk of dangerous loud noises.

134.   As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the Plaintiff, the U.S. Military, its service men and women, and the public in general.

135.   Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff, as well as the U.S. Military, and its service men and women.

136.   The information distributed to the Plaintiff, the U.S. Military, its service men and women and the public in general, by Defendants, including but not limited to reports, statistics, testing, press releases, advertising campaigns, any other commercial media contained material representations of fact and omissions.

137.   The information distributed to the Plaintiff, the U.S. Military, its service men and women and the public in general by Defendants intentionally included representations that

Defendants' 3M dual-ended earplugs ere safe and effective for use to reduce the risk of dangerous loud noises.

138. The information distributed to the Plaintiff, the U.S. Military, its service men and women and the public in general by Defendants intentionally included false representations that 3M dual-ended earplugs were not injurious to the health and safety of its intended users.

139. The information distributed to the Plaintiff, the U.S. Military, its service men and women and the public in general, by Defendants intentionally included false representations that 3M dual-ended earplugs provided a certain level of protection for dangerous loud noises and that the 3M dual-ended earplugs had met the specific performance criteria and standards established and required by the U.S. Government.

140. These representations were all false and misleading.

141. Upon information and belief, Defendants intentionally supposed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that 3M dual-ended earplugs were not safe as a means of reducing the risk of dangerous loud noises.

142. Defendants intentionally made material representations to the Plaintiff, the U.S. Military and its service men and women, and the public in general, regarding the safety of the 3M dual-ended earplugs, specifically but not limited to 3M dual-ended earplugs not having dangerous and serious health and safety concerns.

143. Defendants intentionally made material representations to the Plaintiff, the U.S. Military and its service men and women, and the public in general, regarding the safety of the 3M dual-ended earplugs, specifically but not limited to 3M dual-ended earplugs being a safe means of reducing the risk of dangerous loud noises.

144.   It was the purpose of Defendants in making these representations to deceive and defraud the public, the Plaintiff, the U.S. Military and its Service men and women, gain the confidence of the public, the Plaintiff, the U.S. Military and its Service men and women, to falsely ensure the quality and fitness for use of 3M dual-ended earplugs and induce the public and the U.S. Military to purchase, request, distribute, and continue to use the 3M dual-ended earplugs.

145.   Defendants made the aforementioned false claims and false representations with the intent of convincing the public, the Plaintiff, the U.S. Military and its Service men and women that 3M dual-ended earplugs were fit and safe for use for reducing the risk of dangerous loud noises.

146.   Defendants made claims and representations in their documents submitted to the public, the Plaintiff, the U.S. Military and its Service men and women that 3M dual-ended earplugs did not present serious health and safety risks.

147.   Defendants made claims and representations in their documents submitted to the public, the Plaintiff, the U.S. Military and its Service men and women that 3M dual-ended earplugs did not present health and safety risks greater than other oral hearing protection devices.

148.   These representations and others made by Defendants were false when made, and were made with a pretense of actual knowledge when knowledge did not actually exist, and were made recklessly and without regard to the actual facts.

149.   These representations and others, made by Defendants, were made with the intention of deceiving and defrauding the public, the Plaintiff, the U.S. Military and its Service men and women, and were made in order to induce them to rely upon misrepresentations and caused them to purchase, use, rely on, request, distribute, recommend, and use 3M dual ended earplugs.

150.    Defendants, recklessly and intentionally falsely represented the dangerous and serious health and safety concerns of 3M dual-ended earplugs to the public at large, the U.S. Military and its service men and women, the Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and not as safe as other alternatives, including other forms of hearing protection devices.

151.    Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of 3M dual-ended earplugs by concealing and suppressing material facts regarding the dangerous and serious health and safety concerns of 3M dual-ended earplugs.

152.    Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff, the U.S. Military and its service men and women, into a sense of security so that they would rely on the representations made by Defendants, and purchase, use and rely on 3M dual-ended earplugs and that the U.S. Military would purchase, distribute, and recommend the same.

153.    Defendants, through their marketing efforts, which included but were not limited to the public statements and press releases, knew or should have known that the U.S. Military, public, including the Plaintiff, would rely upon the information being disseminated.

154.    Defendants utilized direct to consumer advertising to market, promote, and advise 3M dual-ended earplugs.

155.    The Plaintiff and the U.S. Military and its service men and women did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of treatment for reducing the risk of

dangerous loud noises and were thereby induced to purchase, use and rely on Defendants' product, 3M dual-ended earplugs.

156.    The Plaintiff and the U.S. Military and its service men and women did not know the truth with regard to the dangerous and serious health and safety concerns of the 3M dual-ended earplugs.

157.    That the Plaintiff did not discover the true facts with respect to the dangerous and serious health and safety concerns, and the false representations of the Defendants, nor could the Plaintiff with reasonable diligence have discovered the true facts.

158.    Had Plaintiff known the true facts with respect to the dangerous and serious health and safety concerns of 3M dual-ended earplugs, Plaintiff would not have used and relied on Defendants' product, the 3M dual-ended earplugs.

159.    The Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly and purposefully on the Plaintiff.

160.    As a result of the foregoing acts and omissions, the Plaintiff has suffered injuries and damages as alleged herein.

## COUNT X: VIOLATION OF CONSUMER PROTECTION LAWS

161.    Plaintiff incorporates by references the paragraphs above as if fully set forth herein.

162.    Defendants have a statutory duty to refrain from making false or fraudulent representations and from engaging in deceptive acts or practices in the sale and promotion of 3M dual-ended earplugs pursuant to the applicable state's consumer protection laws.

163.    Defendants engaged in unfair, deceptive, false and fraudulent acts and practices in violation of the applicable state's consumer protection law through its false and misleading

promotion of 3M dual-ended earplugs designed to induce Plaintiff and the U.S. Military and its service men and women to purchase and use 3M dual-ended earplugs.

164.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including, but not limited to:

    (a) Publishing instructions and product material containing inaccurate and incomplete factual information.

    (b) Misrepresenting the nature, quality, and characteristics about the product; and

    (c) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

165.    Defendants misrepresented the alleged benefits of 3M dual-ended earplugs, failed to disclose material information concerning known side effects of 3M dual-ended earplugs, misrepresented the quality of 3M dual-ended earplugs, and otherwise engaged in fraudulent and deceptive conduct which induced Plaintiff to purchase and use 3M dual-ended earplugs and the U.S. Military to distribute it.

166.    Defendants uniformly communicated the purported benefits of 3M dual-ended earplugs while failing to disclose the serious and dangerous risks related to the use of 3M dual-ended earplugs, its safety, its efficacy, and its usefulness.  Defendants made these representations to the U.S. Military, its service men and women such as Plaintiff, the consumers such as Plaintiff in the marketing and advertising campaign described herein.

167.    Defendants' conduct in connection with 3M dual-ended earplugs was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of 3M dual-ended earplugs.

168.   Defendants' conduct as described above was a material cause of Plaintiff's decision to use 3M dual-ended earplugs and the U.S. Military to distribute them.

169.   As a direct, foreseeable and proximate cause of Defendants' conduct in violation of applicable state law the Plaintiff suffered damages and injuries. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

170.   As a result of the foregoing acts and omissions, the Plaintiff has suffered injuries and damages as alleged herein.

## COUNT XI: LOSS OF CONSORTIUM

171.   Plaintiff incorporates by references the paragraphs above as if fully set forth herein.

172.   Plaintiff Jesus Revilla is married to Plaintiff Rita Revilla.  As a result of Defendants' wrongful conduct which caused her husband's above stated injuries, Plaintiff Rita Revilla has and will in the future suffer a loss of support, consortium and society of her husband, together with related mental anguish and pain and suffering.

173.   WHEREFORE, Plaintiffs demand judgment against each of the Defendants jointly and severally for such sums, including, but not limited to prejudgment interest, as would be necessary to compensate the Plaintiff for the injuries he suffered.

174.   WHEREFORE, Plaintiffs further demand judgment against each of the Defendants for punitive damages.

175.   WHEREFORE, Plaintiffs further demand payment by each of the Defendants jointly and severally of the costs and attorney fees of this action.

176.   WHEREFORE, Plaintiffs further demand payment by each defendant jointly and severally of interest on the above and such other relief as the Court deems just.

## PRAYER

**WHEREFORE**, Plaintiffs demand judgment against each of the Defendants jointly and severally for such sums, including, but not limited to prejudgment and post-judgment interest, as would be necessary to compensate the Plaintiffs for the injuries Plaintiffs have and will suffer. Plaintiffs further demand judgment against each of the Defendants for punitive damages. Plaintiffs further demand payment by each of the Defendants jointly and severally of the costs and attorney fees of this action. Plaintiffs further demand payment by each Defendant jointly and severally of interest on the above and such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: March 28, 2022                **JACOBS & CRUMPLAR, P.A.**

/s/ Raeann Warner
Raeann Warner (DE Bar ID: 4931)
750 Shipyard Dr., Suite 200
Wilmington, DE 19801
Telephone: 302-656-5445
Email: Raeann@jcdelaw.com
*Attorneys for Plaintiffs*

31

Joseph J. Fantini
Rosen Injury Lawyers
101 Greenwood Ave., Suite 440
Jenkintown, PA 19046
Telephone: 215-310-9649
Facsimile: 215-989-4424
Email: jfantini@roseninjurylawyers.com

Michael C. Schafle
Green & Schafle, LLC
2332 S. Broad Street
Philadelphia, PA 19145
Tel: 215-462-3330
Fax: 215-567-1941
Email: mschafle@greenlegalteam.com

*Attorneys for Plaintiffs*